Jeff SHIPLEY, Plaintiff,

v.

C & W CONTRACTING COMPANY, and the Industrial Commission of the State of Utah, et al., Defendants.

No. 13639.

Supreme Court of Utah.

Nov. 18, 1974.

---

W. Brent Wilcox, Moyle & Draper, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., William J. O'Connor, Jr., Ray, Quinney & Nebeker, Salt Lake City, for C & W Contracting.

CROCKETT, Justice:

Plaintiff Jeff Shipley suffered serious injuries, including fractures of his pelvis and lumbar spine when he was crushed under a road grader of his employer, C & W Contracting Company, when it slipped off the jacks while he was replacing a wheel bearing on it near Moab on March 27, 1969. He has been allowed and paid workmen's compensation for temporary total disability for 120 weeks and has already incurred hospital and medical expenses. In addition, the hearing examiner determined that the plaintiff should have 50 per cent permanent partial disability and 50 per cent of his future medical expenses. The Commission adopted and affirmed that order, except that it correctly adjusted the 50 per cent of medical expenses to 100 per cent.

Plaintiff here contests the rating of 50 per cent permanent partial disability, arguing that the evidence compels a finding that he is totally and permanently disabled and should have his award on the basis of 100 per cent disability.

The point of cleavage in this case is this: The Commission based its rating on the percentage of disability, whereas the plaintiff contends that the rating should be on his employability in a gainful occupation.

Hospitalization and medical treatment of plaintiff after the accident did not produce a fully satisfactory result. Two years later, in May 1971, a surgical fusion in his lumbar spine was attempted, which was likewise not entirely successful. His condition seems to have become fixed. He has a continuing numbness in his left leg; wears a back brace; complains that he suffers pain if he attempts to work, or if he walks or stands for any length of time, and that its intensity increases if he sits for long periods or rides in a car. He uses a cane for walks outside of his home, has difficulty in sleeping; and continues to take substantial medication for pain.

At the time of the first hearing on the plaintiff's claim, July 12, 1972, defendant's liability for plaintiff's industrial accident was conceded. The only question for determination was as to the amount of disability. The Commission appointed a medical panel.[1] Their diagnosis and report was that the plaintiff had suffered a 50 per cent permanent partial disability. However, before making a final determination, the parties agreed to have an evaluation of plaintiff's employability by the Department of Employment Security and the Division of Rehabilitation Services. Subsequently, two witnesses from that service testified that due to his physical condition, and the facts that he is 52 years of age, has only a seventh grade education and has limited work skills that, in their opinion, he is unployable in any occupation.

Supplementing this, the doctor who performed the spinal fusion operation testified that he did not disagree with the findings of the medical panel, but also believed that the plaintiff was unemployable, based on his last physical examination of the plaintiff in 1971. The plaintiff is presently receiving social security benefits for total disability. It is not disputed that the plaintiff remains unemployed; and the defendant offered no evidence that he is employable.

---

1. See Section 35-1-77, U.C.A.1953.

Plaintiff's argument that it is mandatory upon the Commission to grant him a permanent disability rating of 100 per cent is grounded on the proposition that the testimony of the witnesses just referred to, that because of his condition which resulted from the industrial accident he is unemployable, is uncontradicted.

Concerning this contention several observations are to be made. The first is that our statutes confer upon the Industrial Commission both the responsibility and the prerogative of making the determination as to disability;[2] and this includes that as to any "loss of bodily function not otherwise provided for herein, . . . [what] the Commission shall deem equitable and in proportion as near as may be to compensation for specific loss as set forth in the schedule . . ."[3]

■ We have no disagreement with the plaintiff's argument that it would be unjust and impermissible for the Commission to obdurately ignore clear, credible and uncontradicted evidence so that its action is arbitrary and unreasonable. Yet is not necessarily bound to accept the opinions of any witness or witnesses, expert or otherwise, as to what its determination should be.[4] If it were so, it should be obvious that this would turn the prerogative entirely over to the expert witness and would relieve the Commission of both its prerogative and its responsibility. This would be especially true in a case like this where it would seem that the question as to the degree of plaintiff's disability, both as to the per-

centage and the permanency thereof, and how it compares to specific disabilities listed in the statute,[5] is not a problem in mathematics which can be determined with absolute certainty, but involves the exercise of some judgment upon which reasonable minds might vary in their conclusions.

■ To be considered in connection with the foregoing is the fact that the burden rested upon the plaintiff to prove the extent of his disability by evidence which persuades the Commission in accordance with his contention. In that connection it is to be had in mind that there was not only the evidence upon which the plaintiff relies concerning his unemployability, but also the evidence, which he seems to ignore, of the medical panel which rated his disability at 50 per cent, which the Commission elected to believe and adopt as its finding. It is not open to question that if the Commission had chosen to make its findings in accordance with the plaintiff's evidence, that award would be sustained. But upon this review it is our duty to survey the total evidence in the light most favorable to the Commission's determination; and to assume that it believed those aspects of the evidence which support its award; and we cannot properly reverse when there is a reasonable basis therein to support the findings and award as made.[6]

Affirmed. No costs awarded.

CALLISTER, C. J., and ELLETT, HENRIOD and TUCKETT, JJ., concur.

---

2. Section 35-1-85, U.C.A.1953.

3. Section 35-1-66, U.C.A.1953.

4. This court said in the case of Spencer v. Industrial Comm., 87 Utah 336, 40 P.2d 188, that such matters are to be decided by the Commission, and not necessarily bound by the opinions of expert witnesses thereon; see also

Garner v. Hecla Mining Company, 19 Utah 2d 367, 431 P.2d 794.

5. As to Commission's discretion in making such ratings see Markus v. Industrial Comm., 5 Utah 2d 347, 301 P.2d 1084.

6. Vause v. Industrial Comm., 17 Utah 2d 217, 407 P.2d 1006.